Filed 7/30/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

| | |
|---|---|
| AQUALLIANCE et al.,<br>    Plaintiffs and Appellants,<br><br>    v.<br><br>VINA GROUNDWATER SUSTAINABILITY<br>AGENCY et al.,<br>    Defendants and Appellants. | C102382<br><br>(Super. Ct. No. 22CV00321) |

APPEAL from a judgment of the Superior Court of Butte County, Tamara L. Mosbarger, Judge. Affirmed.

Law Office of Adam Keats, Adam Keats; Aqua Terra Aeris Law Group, Jason R. Flanders and Harrison M. Beck for Plaintiffs and Appellants.

Paris Kincaid & Wasiewski, Valerie C. Kincaid and Jonathan R. Marz for Defendant and Appellant Vina Groundwater Sustainability Agency.

Minasian Law, Paul Ryan Minasian, Dustin C. Cooper and Aidan P. Wallace for Defendant and Appellant Rock Creek Reclamation District.

Rob Bonta, Attorney General, Annadel A. Almendras, Assistant Attorney General, Sierra S. Arballo, Colleen R. Flannery and Kathryn L. Patterson, Deputy Attorneys General, for Department of Water Resources as Amicus Curiae.

More than three decades after a blue-ribbon commission recommended statewide groundwater regulation (The Governor's Com. to Review Cal. Water Rights Law, Final Rep. (Dec. 1978) pp. 165-166, 168), the Legislature enacted the Sustainable Groundwater Management Act in 2014, which is commonly known as SGMA (Wat. Code,[1] § 10720 et seq.) (Act). The Act has a simple but expansive purpose: "To provide for the sustainable management of groundwater basins." (§ 10720.1, subd. (a); see Legis. Counsel's Dig., Sen. Bill No. 1168 (2013-2014 Reg. Sess.) p. 1 ["This bill would state the policy of the state that groundwater resources be managed sustainably"].) A key tool to achieve this purpose is requiring certain local groundwater sustainability agencies to develop groundwater sustainability plans[2] for their basins. (§ 10727, subd. (a).) After adoption, the groundwater sustainability agency must submit the plan to the Department of Water Resources (Department), which has two years to conduct an initial evaluation of the plan (§ 10733.4, subds. (a), (d)), and then has an ongoing obligation to periodically review the plan to ensure it conforms with plan content requirements and "is likely to achieve the sustainability goal for the basin" (§ 10733, subd. (a)).

As relevant here, the Act also includes a validation provision permitting a "groundwater sustainability agency that adopts a groundwater sustainability plan [to] file an action to determine the validity of the plan … no sooner than 180 days following the adoption of the plan." (§ 10726.6, subd. (a).)

This case examines the intersection between the Department's evaluation and a judicial validation action. Plaintiffs AquAlliance, California Water Impact Network, and California Sportfishing Protection Alliance filed a validation action under the Act challenging the groundwater sustainability plan adopted by defendants Vina Groundwater

_____

[1]     Further undesignated section references are to the Water Code.

[2]     We generally refer to these plans as groundwater sustainability plans; however, at times throughout the opinion we also refer to them as plans or sustainability plans.

2

Sustainability Agency and Rock Creek Reclamation District, asserting the plan "fails to achieve sustainable groundwater management." A validation action such as this brought by an interested party to invalidate an act is often called a reverse validation action. (*Davis v. Fresno Unified School Dist.* (2020) 57 Cal.App.5th 911, 927 (*Davis*).) The Department "approved" defendants' plan while the litigation was pending, and the trial court granted defendants' motion to dismiss plaintiffs' reverse validation action on the ground that the Department's approval mooted the action. Plaintiffs appeal this dismissal, arguing the Act's validation procedures and the Department's review are two separate procedures and the Act "does not limit the scope of validation claims."

We affirm, concluding the trial court did not abuse its discretion in effectively applying the primary jurisdiction doctrine. This doctrine permits trial courts to stay and potentially dismiss actions where there is "a 'pervasive and self-contained system of administrative procedure' " addressing the same issue. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 396 (*Farmers*).) The Act is such a statutory scheme, and plaintiffs' action sought to perform the same evaluation the Act mandated the Department to perform, which justified the eventual dismissal of plaintiffs' action once the Department completed its evaluation.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendants adopted a groundwater sustainability plan under the Act in December 2021 and submitted it to the Department on January 28, 2022. Plaintiffs filed a

---

[3]     Defendants filed a request for judicial notice of a State Water Resources Control Board (Board) meeting agenda showing state intervention under the Act, a petition for writ of mandate plaintiffs filed challenging the Department's approval of defendants' plan, and complaints in two other actions challenging other groundwater sustainability plans. We deny this request because the documents are not relevant to the resolution of this appeal. (See *City and County of San Francisco v. Uber Technologies, Inc.* (2019) 36 Cal.App.5th 66, 72, fn. 3 [denying requests for judicial notice for irrelevant documents].)

"complaint in validation" on February 14, 2022, under section 10726.6, subdivision (a). (Boldface and capitalization omitted.) The complaint asserted one cause of action for violation of the Act, alleging: "[Defendants' plan] fails to achieve sustainable groundwater management and fails to provide for 'the management and use of groundwater in a manner that can be maintained during the planning and implementation horizon without causing undesirable results,' including in the manners described in the paragraphs below." The complaint then includes subsidiary allegations such as the plan "is not likely to achieve its sustainability goal within 20 years"; it "improperly accepts [m]inimum [t]hresholds that are unreasonably low"; "[m]inimum [t]hresholds permit unreasonable and undesirable impacts on trees, vegetation, and wetlands"; and it "does not identify reasonable measures and schedules to eliminate data gaps."

Defendants filed a demurrer arguing plaintiffs' complaint was an unauthorized reverse validation action and brought before the trial court had jurisdiction. The trial court overruled the demurrer, finding section 10726.6 permits reverse validation actions and though the complaint was filed before the provision's 180-day delay for validation actions, that date had subsequently passed and defendants were not prejudiced.

Plaintiffs filed a motion for summary judgment on November 14, 2023. The motion made three arguments: (1) The plan's " 'measurable objective' and 'minimum threshold' for groundwater levels violate [the Act] in several ways"; (2) the plan "never explains whether a sufficient correlation exists between groundwater elevation and interconnected surface waters to justify using groundwater levels as a proxy for monitoring impacts to interconnected surface waters"; and (3) "the 'minimum threshold' selected for monitoring impacts on land subsidence is unlawfully weak." The trial court denied the motion in March 2024, finding it premature because the adoption of the plan appeared to the court "to be a quasi-legislative activity" requiring an administrative record that had not yet been compiled.

4

Defendants filed a motion to dismiss in June 2024 arguing the Department's approval of defendants' plan in July 2023 mooted plaintiffs' validation action. Defendants included a request for judicial notice of the Department's approval that found, in part, defendants' plan "appears likely to achieve the sustainability goal for the" groundwater basin. This approval included a 45-page staff report with a summary of the Department's assessment. It further described evaluation criteria and submission requirements, as well as provided a plan evaluation and a final staff recommendation. The plan evaluation section noted the Department evaluated defendants' plan for "whether its conclusions are scientifically reasonable, and whether the [plan], through the implementation of clearly defined and technically feasible projects and management actions, is likely to achieve a tenable sustainability goal for the basin." The report concluded with the staff recommendation to approve the plan in part because "[i]mplementation of the [plan] will likely achieve the sustainability goal for the" basin. But the report also recommended six corrective actions that did not inhibit approval.

In August 2024, the trial court granted defendants' request for judicial notice and the motion to dismiss, finding: "[T]he status of [p]laintiffs' [c]omplaint has fundamentally changed since the filing of this action and after the [Department's] approval of [defendants' plan] and for the [c]ourt to allow this case to proceed 'would require [it] to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.[']  [(]*Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609….[)]  The [c]ourt can no longer provide the parties effectual relief on [p]laintiffs' reverse validation claim in light of [the Department]'s approval of the [groundwater sustainability plan] and the matter is dismissed as moot."  (Italics added.)

Plaintiffs appeal the granting of the motion to dismiss and the denial of their motion for summary judgment. Defendants also appeal the order overruling their demurrer.

DISCUSSION

Plaintiffs contend their validation action is not moot or otherwise barred because the Act "establishes separate and independent procedures for citizen suit judicial review, compared to [the Department's] administrative review," and the Act "does not limit the scope of validation claims." Plaintiffs also challenge the denial of their summary judgment motion on similar grounds. Defendants challenge the overruling of their demurrer, arguing only groundwater sustainability agencies may bring validation actions. To review these decisions, we must examine whether reverse validation actions are permitted, the scope of the Department's authority under the Act, and the effects these two bodies of authority have on each other.

We begin with an examination of the relevant statutory provisions.

I

*The Act*

After a record-breaking drought, the Legislature passed the Act in 2014 "[t]o provide for the sustainable management of groundwater basins." (§ 10720.1, subd. (a); see Smith, *Ten Years After: Water Rules 2.0* (Nov. 2024) 47 Los Angeles Lawyer 22.) "[T]he Act is generally structured as a long-term process" with "intervention points spread over several years" and which "generally takes a long-term approach to reaching sustainability, specifically stating the groundwater plan must include measurable objectives and milestones that reach sustainability within 20 years of implementation and allowing for regular reviews of local agencies' progress." (*Kings County Farm Bureau v. State Water Resources Control Bd.* (2025) 115 Cal.App.5th 782, 795-796 (*Kings County Farm Bureau*).)

The Act is organized into several broad topics, including the identification of groundwater basin boundaries (§§ 10722-10722.5), establishment of groundwater agencies with the power and authority to oversee the basins (§§ 10723-10726.9 [establishing agencies and their authority], 10730-10731 [financial authority]),

6

development of groundwater sustainability plans by the groundwater agencies to guide management of the basins (§§ 10727-10728.6), and support and oversight of the agencies and their plans by the Department (§§ 10733-10733.8) and the Board (§§ 10735-10736.6).

A

*Groundwater Sustainability Plan Requirements*

The Act requires groundwater sustainability agencies overseeing medium- or high-priority basins, as defined by the Department per statute (§ 10722.4), to develop and implement a groundwater sustainability plan "to meet the sustainability goal established" by the Act (§ 10727, subd. (a)). " 'Sustainability goal' means the existence and implementation of … groundwater sustainability plans that achieve sustainable groundwater management by identifying and causing the implementation of measures targeted to ensure that the applicable basin is operated within its sustainable yield." (§ 10721, subd. (u).) " 'Sustainable yield' means the maximum quantity of water, calculated over a base period representative of long-term conditions in the basin and including any temporary surplus, that can be withdrawn annually from a groundwater supply without causing an undesirable result." (§ 10721, subd. (w).) The Act provides a list of six "[u]ndesirable results," including among them: "[c]hronic lowering of groundwater levels," "[s]ignificant and unreasonable reduction of groundwater storage," and "[s]ignificant and unreasonable land subsidence that substantially interferes with surface land uses." (§ 10721, subd. (x).)

Under section 10727.2, the Act provides a list of items groundwater sustainability plans must include, such as "[a] description of the physical setting and characteristics of the aquifer system underlying the basin," "[m]easurable objectives … to achieve the sustainability goal in the basin within 20 years of the implementation of the plan," and "[a] planning and implementation horizon." (§ 1027.2, subds. (a), (b)(1), (c).) Section 10727.4 requires additional contents for specific circumstances "where

7

appropriate," such as "[c]ontrol of saline water intrusion" and "[w]ell construction policies." (§ 10727.4, subds. (a), (g).)

"A groundwater sustainability agency shall periodically evaluate its groundwater sustainability plan" to ensure it continues to meet plan objectives "and whether those objectives are meeting the sustainability goal in the basin." (§ 10728.2.)

B

*The Department's Responsibilities*

The Act requires groundwater sustainability agencies to submit plans to the Department for evaluation. (§ 10733.4.) Section 10733.4, subdivision (a) states: "Upon adoption of a groundwater sustainability plan, a groundwater sustainability agency shall submit the groundwater sustainability plan to the [D]epartment for review pursuant to this chapter." On the Department's receipt of a plan, "the [D]epartment shall post the plan on the [D]epartment's internet website and provide 60 days for persons to submit comments to the [D]epartment about the plan." (§ 10733.4, subd. (c).) "The [D]epartment shall evaluate the groundwater sustainability plan within two years of its submission by a groundwater sustainability agency and issue an assessment of the plan. The assessment may include recommended corrective actions to address any deficiencies identified by the [D]epartment." (§ 10733.4, subd. (d).) But this section does not "prohibit a groundwater sustainability agency from implementing a groundwater sustainability plan prior to evaluation and assessment of the groundwater sustainability plan by the [D]epartment." (§ 10733.4, subd. (e).)

The Act also, under section 10733, provides general evaluation authority by mandating "[t]he [D]epartment shall periodically review the groundwater sustainability plans developed by groundwater sustainability agencies pursuant to [the Act] to evaluate whether a plan conforms with [s]ections 10727.2 and 10727.4 and is likely to achieve the sustainability goal for the basin covered by the groundwater sustainability plan."

8

(§ 10733, subd. (a).) These periodic reviews must occur at least every five years. (§ 10733.8.)

The Act requires the Department to "adopt regulations for evaluating groundwater sustainability plans" and "the implementation of groundwater sustainability plans." (§ 10733.2, subd. (a)(1).) The Department did just that, adopting regulations addressing technical and reporting standards, plan procedures, plan contents, and how the Department conducts its evaluation and assessment of the plans. (Cal. Code Regs., tit. 23, § 350 et seq.) Under these regulations, the Department issues a written assessment that includes a determination of whether the plan is "[a]pproved," "[i]ncomplete," or "[i]nadequate." (Cal. Code Regs., tit. 23, § 355.2, subd. (e)(1)-(3).) The latter two findings are principally based upon "deficiencies" found and not corrected. (Cal. Code Regs., tit. 23, § 355.2, subd. (e)(2), (3).)

The Department may also "provide technical assistance to any groundwater sustainability agency in response to that agency's request for assistance in the development and implementation of a groundwater sustainability plan. The [D]epartment shall use its best efforts to provide the requested assistance." (§ 10729, subd. (b).)

The Board may intervene and declare a basin a "probationary basin" if "the [D]epartment, in consultation with the [B]oard, determines that a groundwater sustainability plan is inadequate or that the groundwater sustainability program is not being implemented in a manner that will likely achieve the sustainability goal." (§ 10735.2, subd. (a)(3); see *Kings County Farm Bureau*, *supra*, 115 Cal.App.5th at p. 795.) The Board then has options to identify issues or "may develop an interim plan … for the probationary basin one year after the designation" of probationary (§ 10735.6, subds. (a), (b)), and the Board must find this plan "complies with the sustainability goal for that portion of the basin or would help meet the sustainability goal for the basin" (§ 10735.8, subd. (e)).

9

## C

### *Validation*

" 'A validation proceeding … is a lawsuit filed and prosecuted for the purpose of securing a judgment determining the validity of a particular local governmental decision or act.' [Citation.] 'A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons.' " (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 833, italics omitted.)

Code of Civil Procedure section 860 et seq. provides the standard validating procedures. Code of Civil Procedure section 860 states: "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action … to determine the validity of such matter. The action shall be in the nature of a proceeding in rem." But if the agency does not bring a validation action, Code of Civil Procedure section 863 permits "any interested person [to] bring an action within the time and in the court specified by [Code of Civil Procedure s]ection 860 to determine the validity of such matter." "Generally, such a proceeding is called a ' "reverse validation action." ' " (*Davis*, *supra*, 57 Cal.App.5th at p. 927.)

"Not all acts or transactions of a public agency are subject to validation. [Citation.] The language in [Code of Civil Procedure] section 860 does not specifically identify the matters subject to validation actions. Instead, [Code of Civil Procedure] section 860 refers to 'any matter which under any other law is authorized to be determined pursuant to this chapter.' Based on this reference to 'any other law,' California courts examine other statutes (and cases interpreting those statutes) to determine the scope of agency decisions and acts that are subject to validation under the validation statute." (*Davis*, *supra*, 57 Cal.App.5th at pp. 928-929.) " 'There is subject matter jurisdiction to entertain a validation proceeding only if there is a statutory basis for

that jurisdiction.' " (*Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1131 (*Alliance San Diego*).)

Here, the "other law" applying Code of Civil Procedure section 860 is the Act's validation provision, Water Code section 10726.6, subdivision (a), which states: "A groundwater sustainability agency that adopts a groundwater sustainability plan may file an action to determine the validity of the plan pursuant to [c]hapter 9 (commencing with [s]ection 860) of [t]itle 10 of [p]art 2 of the Code of Civil Procedure no sooner than 180 days following the adoption of the plan." Water Code section 10726.6, subdivision (e) also provides, "Except as otherwise provided in this section, actions by a groundwater sustainability agency are subject to judicial review pursuant to [s]ection 1085 of the Code of Civil Procedure."

## II

### *The Trial Court Had Jurisdiction To Consider Plaintiffs' Reverse Validation Action*

We now analyze the components of the Act detailed above to determine whether section 10726.6 permits reverse validation actions. If it does not, then plaintiffs' action is necessarily barred, and the analysis is at an end; the trial court would have also necessarily erred in overruling defendants' demurrer. (*Alliance San Diego*, *supra*, 114 Cal.App.5th at p. 1131 [" 'There is subject matter jurisdiction to entertain a validation proceeding only if there is a statutory basis for that jurisdiction' "].)

Defendants argued in their demurrer and again on appeal that the Act allows only agencies to bring validation actions, not interested parties. Defendants rely on the text of the validation provision stating, "A *groundwater sustainability agency* … may file an action to determine the validity of the plan." (§ 10726.6, subd. (a), italics added.) We disagree.

This is an issue of statutory interpretation, which is a question of law subject to this court's independent review. (*Neptune Management Corp. v. Cemetery & Funeral Bureau* (2024) 100 Cal.App.5th 1007, 1012.) " ' " ' "As in any case involving statutory

11

interpretation, our fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " [Citation.] "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." ' [Citations.] If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end. If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy." (*Earnest v. Commission on Teacher Credentialing* (2023) 90 Cal.App.5th 62, 74.)

The plain language of the statute establishes reverse validation actions are permissible. Though the statute mentions only agencies, the remainder of the provision incorporates the entirety of the validation procedures without exception by stating "pursuant to [c]hapter 9 (commencing with [s]ection 860) of [t]itle 10 of [p]art 2 of the Code of Civil Procedure." (Wat. Code, § 10726.6, subd. (a).) This chapter includes the reverse validation procedures of Code of Civil Procedure section 863. Water Code section 10726.6 consequently mirrors the standard validation proceeding under Code of Civil Procedure section 860 permitting "[a] public agency" to bring a validation action but still permitting reverse validation actions by others under Code of Civil Procedure section 863.

Validation statutes mirroring Water Code section 10726.6 are also assumed to permit reverse validation. For example, Government Code section 53511 states: "A *local agency* may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to [c]hapter 9 (commencing with [s]ection 860) of [t]itle 10 of [p]art 2 of the Code of Civil Procedure." (Italics added.) And courts routinely presume this provision permits reverse validation procedures brought by interested parties. (See *Davis*, *supra*, 57 Cal.App.5th at pp. 921,

12

927-929 [analyzing a reverse validation action under Gov. Code, § 53511]; *Alliance San Diego*, *supra*, 114 Cal.App.5th at pp. 1127-1128, 1131-1135 [same].)

The Legislature can prohibit reverse validation actions but must do so with explicit language not present in Water Code section 10726.6.  For example, our Supreme Court found such language in Streets and Highways Code section 10601, which states: "Notwithstanding any other provisions of law, the action authorized by this section shall not be brought by any person *other than the legislative body or the contractor*."  (Italics added; see *Bonander v. Town of Tiburon* (2009) 46 Cal.4th 646, 657.)  No such limiting language is in Water Code section 10726.6.

Considering the incorporation of the general validation statutes without exception, including the reverse validation procedures under Code of Civil Procedure section 863, and the lack of explicit language limiting reverse validation proceedings, we conclude interested parties may also bring reverse validation actions under Water Code section 10726.6.

### III

*The Trial Court Did Not Abuse Its Discretion By Deferring To The Department For The Sustainability Evaluation Of Defendants' Plan*

We next consider the effect the Department's evaluation had on plaintiffs' reverse validation action, if any.  The trial court found plaintiffs' validation action " 'would require [it] to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.' "  The trial court found these considerations justified dismissal of the action, ruling that the Department's approval of defendants' plan mooted plaintiffs' validation action.  However, the case the trial court cited applied the *judicial abstention doctrine*.  (*Shuts v. Covenant Holdco LLC*, *supra*, 208 Cal.App.4th at pp. 615-616 (*Shuts*).)

We conclude the trial court's deference to the Department was not an abuse of discretion, but under the *primary jurisdiction doctrine*.

13

A

*Doctrines Of Comity Between Courts And Administrative Agencies*

There are three "closely related doctrines that either require or permit judicial deference to administrative agencies":  abstention, primary jurisdiction, and exhaustion of administrative remedies.  (*Bradley v. CVS Pharmacy, Inc.* (2021) 64 Cal.App.5th 902, 911-913 (*Bradley*).)[4]

The abstention "doctrine allows a court to abstain from adjudicating a suit that seeks equitable remedies if 'granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.  [Citations.]'  [Citation.]  Abstention may be appropriate if 'the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency,' or if 'granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress.' "  (*Shuts*, *supra*, 208 Cal.App.4th at p. 616.)

Both exhaustion of administrative remedies and primary jurisdiction, as explained by our Supreme Court in *Farmers*, *supra*, 2 Cal.4th at page 390, " 'are essentially doctrines of comity between courts and agencies.  They are two sides of the timing coin: Each determines whether an action may be brought in a court or whether an agency proceeding, or further agency proceeding, is necessary.' [Citation.]  [¶] …
' "*Exhaustion*" applies where a claim is cognizable in the first instance by an administrative agency alone*; judicial interference is withheld until the administrative

---

**4**      The primary jurisdiction doctrine is "also referred to as the doctrine of 'prior resort' or 'preliminary jurisdiction.' "  (*Farmers*, *supra*, 2 Cal.4th at p. 386, fn. omitted.) We refer to it as the primary jurisdiction doctrine for consistency.  Also, at least one court has said primary jurisdiction and judicial abstention are the same.  (*Adhav v. Midway Rent A Car, Inc.* (2019) 37 Cal.App.5th 954, 978 ["we asked for supplemental briefing from the parties on the wisdom of judicial abstention.  This doctrine [is] alternatively called primary jurisdiction"].)  This is incorrect.

14

process has run its course. *"Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts*, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' "

"The policy reasons behind the two doctrines are similar and overlapping. The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary). [Citations.] As explained above, the primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws." (*Farmers*, *supra*, 2 Cal.4th at p. 391.)

"No rigid formula exists for applying the primary jurisdiction doctrine [citation]. Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. [Citations.] This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Farmers*, *supra*, 2 Cal.4th at pp. 391-392, fn. omitted.)

A decision whether to defer to an administrative agency under these doctrines is reviewed for abuse of discretion. (*Bradley*, *supra*, 64 Cal.App.5th at p. 913.)

B

*Plaintiffs' Reverse Validation Action Overlaps With The Department's Review*

Before any of these doctrines can apply there must be some overlap between the judicial action and administrative authority, otherwise there would be no basis on which

15

to defer to the administrative body.  We conclude there is a complete overlap between the two actions in this case.

Plaintiffs' reverse validation complaint alleges:  "[Defendants' plan] fails to achieve sustainable groundwater management and fails to provide for 'the management and use of groundwater in a manner that can be maintained during the planning and implementation horizon without causing undesirable results.' "  This argument quotes the Act's definition of " '[s]ustainable groundwater management,' " which is integral to the determination of the sustainability goal.  (§ 10721, subd. (v); see § 10721, subd. (u).) The complaint also specifically alleges the plan "is not likely to achieve its sustainability goal within 20 years."

Plaintiffs' validation action seeks to conduct the core evaluation of groundwater sustainability plans under the Act.  The Act is structured around "provid[ing] for the sustainable management of groundwater basins."  (§ 10720.1, subd. (a); see Legis. Counsel's Dig., Sen. Bill No. 1168 (2013-2014 Reg. Sess.) p. 1 ["This bill would state the policy of the state that groundwater resources be managed sustainably"].)  Agencies must therefore develop and implement a groundwater sustainability plan "to meet the sustainability goal established" by the Act.  (§ 10727, subd. (a).)  The Act then requires the Department's assessment for whether a groundwater sustainability plan "is likely to achieve the sustainability goal for the basin covered by the groundwater sustainability plan" (§ 10733, subd. (a); see § 10733.8 [every five years the Department shall issue an assessment on plans "with an emphasis on assessing progress in achieving the sustainability goal within the basin"]), as well as the agencies' own internal periodic reviews for whether the plan's actions "are meeting the plan's management objectives and whether those objectives are meeting the sustainability goal in the basin" (§ 10728.2).  There is therefore a core *sustainability evaluation* within the Act to determine whether the plan will achieve the sustainability goal, and consequently

16

sustainable groundwater management. And plaintiffs' complaint explicitly and exclusively challenges defendants' plan based on this sustainability evaluation.

The Legislature unambiguously granted the Department the authority to conduct the sustainability evaluation of plans initially and on an ongoing basis. Not only the authority, but the mandate: "The [D]epartment *shall* evaluate the groundwater sustainability plan within two years of its submission" (§ 10733.4, subd. (d), italics added) and "[t]he [D]epartment *shall* periodically review the groundwater sustainability plans developed by groundwater sustainability agencies … to evaluate whether a plan … is likely to achieve the sustainability goal" (§ 10733, subd. (a), italics added). The Act also mandates the Department promulgate regulations on how the Department must conduct evaluations: "[T]he [D]epartment *shall* adopt regulations for evaluating groundwater sustainability plans." (§ 10733.2, subd. (a)(1), italics added.)

Plaintiffs' validation action therefore directly overlaps with the Department's evaluation because they both would require the same sustainability evaluation of defendants' plan core to the Act's goal of sustainable groundwater management.

Plaintiffs contend there is no conflict because "[a] validation judgment of a [groundwater sustainability agency's] adoption of a plan is binding only to that agency's decision; it cannot and does not bind [the Department's] subsequent review and decision made pursuant to its separate administrative authority under [the Act]." (Italics omitted.) Plaintiffs rely on section 10733.4 in arguing the Department's evaluation is a "separate and independent procedure[]" from validation. Plaintiffs are correct that nothing in section 10733.4 would on its face conflict with a validation action because it simply requires the Department to "evaluate the groundwater sustainability plan within two years of its submission," without explaining what that evaluation entails. (§ 10733.4, subd. (d).) But the Department evaluates the plans under section 10733.4 "pursuant to this chapter." (§ 10733.4, subd. (a).) And section 10733 is within the same chapter as section 10733.4. (See div. 6, pt. 2.74, ch. 10.) Plaintiffs never cite to section 10733 in

17

any of their briefs even though section 10733 is the global mandate for the Department to evaluate plans for whether they are "likely to achieve the sustainability goal." (§ 10733, subd. (a).) This is then applied to section 10733.4's evaluation, which sets a timeframe for the Department's initial evaluation. The Department also performed the sustainability evaluation here when approving defendants' plan by reviewing whether it "is likely to achieve a tenable sustainability goal for the basin."

The procedures also cannot be separate because they rely on the same regulations. The Act's mandate for the Department to "adopt regulations for evaluating groundwater sustainability plans" (§ 10733.2, subd. (a)(1)), must cover regulations for the sustainability evaluation the Department conducts under section 10733. The Department consequently promulgated regulations "describ[ing] the methodology and criteria used by the Department to evaluate and assess a [p]lan, periodically evaluate and assess the implementation of a [p]lan, or evaluate and assess amendments to a [p]lan" (Cal. Code Regs., tit. 23, § 355), including what the Department must consider "[w]hen evaluating whether a [p]lan is likely to achieve the sustainability goal for the basin" (Cal. Code Regs., tit. 23, § 355.4, subd. (b)).

Plaintiffs' complaint, motion for summary judgment, and arguments on appeal rely on these regulations. Plaintiffs do not provide citations in the complaint, but the complaint's specific allegations under the general umbrella of an inadequate sustainability evaluation use language from the regulations. This includes alleging the plan "improperly accepts [m]inimum [t]hresholds that are unreasonably low" and "does not identify reasonable measures and schedules to eliminate data gaps." This is language from California Code of Regulations, title 23, section 355.4, subdivision (b), which provides a list of considerations for the Department "[w]hen evaluating whether a [p]lan is likely to achieve the sustainability goal for the basin." (Cal. Code Regs., tit. 23, § 355.4, subd. (b)(1), (2).) The motion for summary judgment challenges the plan's measurable objectives and minimum threshold, citing to the regulation's requirements for

18

measurable objectives, minimum thresholds, and representative monitoring. (Cal. Code Regs., tit. 23, §§ 354.28, 354.30, 354.36.) Plaintiffs continue these arguments on appeal and cite these same regulations. Plaintiffs' position that its validation action and the Department's review are two separate procedures is therefore belied by their own reliance on regulations the Department adopted to "*evaluat*[*e*] *groundwater sustainability plans*." (§ 10733.2, subd. (a)(1), italics added.)

Plaintiffs also allege a validation action would apply a different standard under the Act (strict compliance) than the Department under its regulations (substantial compliance). This cannot be so because the regulations flow from the Act to apply the Act's mandates for evaluation. (§ 10733.2, subd. (a)(1).) The statutory provisions under the Act and the regulations are applied together in making the sustainability evaluation and plaintiffs do not contend the regulations the Department promulgated for plan evaluation exceeded its authority under the Act.

Ultimately, the trial court in this case would be required to perform the same sustainability evaluation by applying the same regulations with the same standards as the Department. We therefore conclude there is a complete overlap in the analysis required to dispose of plaintiffs' reverse validation action challenging defendants' plan and the Department's evaluation of defendants' sustainability plan under the Act.

C

*The Trial Court Did Not Abuse Its Discretion By*

*Applying The Primary Jurisdiction Doctrine*

To determine whether the trial court erred in dismissing plaintiffs' action we finally address the impact of the overlap between the Department's review and a reverse validation action seeking to challenge a sustainability plan based on the sustainability evaluation.

As mentioned, the trial court found the Department's evaluation mooted plaintiffs' action while quoting language from the doctrine of abstention. (*Shuts*, *supra*,

19

208 Cal.App.4th at pp. 615-616.) Plaintiffs argue that, to the extent the trial court relied on abstention, the Act's "provisions at issue are sufficiently clear and mandatory enough to permit judicial review of the [plan] for compliance therewith without requiring the trial court to undertake complex scientific or economic policy evaluations that are beyond the abilities of the courts." Defendants do not address abstention in any of their briefs. The Department, in an amicus curiae brief, argues for an interpretation of the Act reserving for it exclusive review of certain "Department [r]eview [i]ssues," essentially everything in section 10733. Due to this exclusive jurisdiction, the Department contends administrative exhaustion applies, meaning judicial review of a plan cannot occur until after the Department has completed the "Department [r]eview [i]ssues." But the Department contends abstention would be the proper remedy in the alternative.

Abstention is not appropriate here. This doctrine applies where the case impacts the administrative agency's regulatory authority on difficult policy issues affecting nonparties. (*National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 431, fn. 12 ["Abstention is now 'appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar' "].) Here, whether defendants' plan does or does not satisfy the sustainability evaluation would affect only defendants and their plan. This is unlike, for example, considering restitution and disgorgement orders that would interfere with statewide "regulation of beverage container recycling and potentially risk throwing the entire complex economic arrangement out of balance." (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 642.) The trial court here also made no finding indicating it could not perform the sustainability evaluation due to its complex policy considerations.

Exhaustion of administrative remedies also does not apply. The trial court found, rightly as we determined, plaintiffs' reverse validation action proper under the Act and consequently did not immediately dismiss the case to allow the Department's exclusive

20

review, as the doctrine of administrative exhaustion would have required. (*Cundiff v. GTE California Inc.* (2002) 101 Cal.App.4th 1395, 1413 ["The exhaustion of administrative remedies doctrine is applied where an administrative agency must be the first body to consider a matter"].) And similarly with abstention, the trial court never stated it could not consider the validation action.

This leaves primary jurisdiction. "[T]he doctrine of primary jurisdiction applies where a claim *can* originally be addressed in a court, but would be *better addressed* first by an administrative body." (*Cundiff v. GTE California Inc.*, *supra*, 101 Cal.App.4th at p. 1413.) If this doctrine applies, it " 'requires that the suit be stayed until the agency resolves the issue, whereupon the lawsuit resumes if the agency's resolution (assuming it survives review by whatever court has jurisdiction to review the agency's decisions) has not resolved the entire controversy.' " (*Wise v. Pacific Gas & Electric Co.* (2005) 132 Cal.App.4th 725, 741, italics omitted (*Wise I*).) Though the trial court did not stay the action, it waited to perform the sustainability evaluation until there was an administrative record from the Department, and once the Department completed its evaluation the trial court found that determination spoke to the entire controversy, which justified dismissal. This is an application of the primary jurisdiction doctrine despite the trial court not explicitly invoking it.

The trial court did not abuse its discretion by applying the primary jurisdiction doctrine.[5] A threshold inquiry is whether the statutory scheme "precludes a court from

---

[5] None of the parties discussed primary jurisdiction. However, there was briefing on the related doctrines of abstention and administrative exhaustion, and the parties had the opportunity to fully discuss all relevant issues, including comity between the trial court and the Department. We therefore did not request supplemental briefing on the specific application of the primary jurisdiction doctrine. (*Olson v. Hornbrook Community Services Dist.* (2021) 68 Cal.App.5th 260, 263, fn. 2 [not requesting supplemental briefing on the abstention doctrine where a party discussed the doctrine of primary jurisdiction].)

exercising discretion under the primary jurisdiction doctrine," meaning the relevant statute prohibits a court from "declin[ing] to adjudicate a suit on the basis that available administrative processes should first be invoked and completed." (*Farmers*, *supra*, 2 Cal.4th at p. 394.)  That is not the case here—nowhere does the Act bar courts from deferring adjudication in the face of a parallel administrative review.

Next, the application of the doctrine depends on the service of two related policies: (1) enhancement of court decisionmaking and efficiency through leveraging administrative expertise, and (2) helping assure uniform application of regulatory laws. (*Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 296, 298 (*Wise II*).)  Both policies were very well served here.

First, there is more than simply administrative expertise here; the Act is "a 'pervasive and self-contained system of administrative procedure.' " (*Farmers*, *supra*, 2 Cal.4th at p. 396.)  Again, the Act unambiguously mandates the Department conduct the sustainability evaluation of plans initially and on an ongoing basis (§§ 10733, subd. (a), 10733.4, subd. (d)), and to promulgate regulations on how it must conduct these evaluations (§ 10733.2, subd. (a)(1)).  "[I]t seems clear to us that the [Department] is best suited initially to determine whether [its] own regulations pertaining to [the sustainability evaluation] have been faithfully adhered to by an [agency]." (*Farmers*, at p. 399.)

The Department's authority is also one part of an overall scheme where "the Act is generally structured as a long-term process." (*Kings County Farm Bureau*, *supra*, 115 Cal.App.5th at pp. 795-796.)  The Act permits the immediate implementation of plans (§ 10733.4, subd. (a)) and gives the Department up to two years to find a plan inadequate or incomplete (§ 10733.4, subd. (d)), and then the Board may intervene with probationary basins (§§ 10735.2, subd. (a)(3), 10735.6, 10735.8).  This intervention includes the Board potentially drafting an interim plan one year after the Board designates the basin as probationary.  (§ 10735.6, subd. (b).)  Overall, the Act indicates a

legislative design focused on local management with a steadily increasing involvement from the Department and the Board without necessary reliance on judicial intervention to protect groundwater sustainability.  This self-contained system of administrative procedure is a strong factor in favor of applying the primary jurisdiction doctrine in this case.  (See *People v. Adir Internat., LLC* (2025) 114 Cal.App.5th 275, 290-292 [discussing and applying the importance of a " ' "pervasive and self-contained system of administrative procedure" ' " for primary jurisdiction].)

The sustainability evaluation is also a highly technical analysis the Department is uniquely tailored to perform.  The sustainability evaluation ensures "the applicable basin is operated within its sustainable yield," meaning operating the basin without causing undesirable results such as "[c]hronic lowering of groundwater levels indicating a *significant* and *unreasonable* depletion of supply if continued over the planning and implementation horizon."  (§ 10721, subds. (u), (x)(1), italics added; see § 10721, subd. (w).)  The Department's regulation detailing the evaluation of the plan further establishes the technical nature of this review requiring expert value judgments such as "[w]hether the [p]lan includes a *reasonable* assessment of overdraft conditions and includes *reasonable* means to mitigate overdraft, if present."  (Cal. Code Regs., tit. 23, § 355.4, subd. (b)(6), italics added.)  The Legislature also gave the Department two years to complete its review.  (§ 10733.4, subd. (d).)  It took the Department 18 months to review defendants' plan, which included a 45-page staff report analyzing, among other things, whether the plan's "conclusions are scientifically reasonable."  The Act also entrusts the Department to "provide *technical assistance* to any groundwater sustainability agency in response to that agency's request for assistance in the development and implementation of a groundwater sustainability plan."  (§ 10729, subd. (b), italics added.)

Explicit Department authority, comprehensive statutory structure, and a highly technical analysis firmly establish the sustainability evaluation matches primary

23

jurisdiction's exemplar situation by " 'requir[ing] the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.' " (*Farmers*, *supra*, 2 Cal.4th at p. 390.) These considerations also concurrently further the doctrine's first analytical policy of judicial efficiency through leveraging administrative expertise. (*Wise II*, *supra*, 77 Cal.App.4th at pp. 296, 298.)

Primary jurisdiction's second policy of uniformity is also supported here. The Act governs groundwater basins throughout the state. (§ 10720.3, subd. (a).) And though the Act empowers local management of groundwater basins (see, e.g., § 10720.1, subds. (b), (d), (h)), as discussed at length above, the Act also entrusts the Department, along with the Board, with oversight of local groundwater sustainability agencies, including their sustainability plans (§§ 10733.4, 10735.2, subd. (a)(3), 10735.6, 10735.8). These sustainability plans are core to the Act's underlying sustainability goal. (§ 10721, subd. (u) [" 'Sustainability goal' " defined by existence of plans].) Courts deferring evaluations of groundwater sustainability plans to the Department, at least for the sustainability evaluation as pled in this case, therefore helps ensure plans throughout the state are evaluated uniformly by the same body to protect a core purpose of the Act. The alternative could result in the state's many courts applying the technical and subjective sustainability evaluation in differing manners, resulting in an uneven application of the Act and ultimately undermining its sustainability goal. For example here, had the trial court conducted its own sustainability evaluation of defendants' plan and disagreed with the Department's evaluation, there would have been an intra-basin inconsistency in defendants' basin on whether the plan satisfied the Act and how defendants should move forward in managing the basin. This problem would burgeon if permitted across the state, potentially creating a multitude of intra- and inter-basin inconsistencies.

Given the direct and meaningful impact on both policies undergirding the primary jurisdiction doctrine, we conclude it was not arbitrary or capricious for the trial court to apply the doctrine in this case. The Act's detailed allocation of authority to the

24

Department to perform the technical sustainability evaluation and the need for uniform application of this evaluation throughout the state to support the Act's goals justifies application of the primary jurisdiction doctrine.

Application of the primary jurisdiction doctrine here is comparable to *Bradley*, *supra*, 64 Cal.App.5th 902. There, a pain management doctor sued a pharmacy that refused to fill the doctor's prescriptions of controlled substances based on irregularities the pharmacy identified in the doctor's prescriptions. (*Id*. at pp. 908-910.) The trial court denied the doctor's preliminary injunction and sustained the pharmacy's demurrer because the suit "raised issues that 'should be dealt with by the [California State Board of Pharmacy].' The [trial] court explained that, '[w]hether we talk about it in terms of the demurrer or the injunction, there is an administrative body that is set up to deal with this.' " (*Id*. at p. 911.)

The appellate court first explained the "several different but closely related doctrines that either require or permit judicial deference to administrative agencies": administrative exhaustion, primary jurisdiction, and abstention. (*Bradley*, *supra*, 64 Cal.App.5th at pp. 911-913.) The appellate court found, based on our Supreme Court precedent, "[T]he primary jurisdiction doctrine *does* apply here." (*Id*. at p. 916.) Examining the doctrine's two core polices, the court first found the doctor's "injunction motion raise[d] issues that are within the particular expertise of the [California State Board of Pharmacy]" (pharmacy board). (*Ibid*.) The core issue was the pharmacy's legal obligation to fill prescriptions, and the pharmacy board "has a unique ability to evaluate whether a decision not to fill prescriptions was justified by a pharmaceutical licensee's 'professional training and judgment.' The [pharmacy b]oard also has the expertise to evaluate the scope of [the pharmacy's] *obligation* not to fill particular prescriptions under the corresponding responsibility rule." (*Id*. at p. 917.) Further, there were specific facts about the appropriate dosage amounts, and the pharmacy board "is better equipped than the courts to evaluate how such technical claims affect [the pharmacy's] statutory

25

'corresponding responsibility.' " (*Ibid*.) "Second, the wide scope both of the opioid problem and of [the pharmacy's] program to monitor prescriptions supports the need for 'regulatory uniformity.' [Citation.] … The [pharmacy b]oard is well positioned to adopt a uniform approach to determining whether such [prescription monitoring] programs— and [the pharmacy's] implementation of its own program here—are consistent with pharmacists' professional obligations." (*Id*. at p. 918.)

In *Bradley*, the trial court did not explicitly apply the primary jurisdiction doctrine either. But the appellate court found, "[T]he [trial] court's conclusion that [the doctor] 'should have' taken advantage of that expertise suggests that the trial court recognized the benefits of administrative review." (*Bradley*, *supra*, 64 Cal.App.5th at p. 922.) Thus, the appellate court concluded, "The record shows that the trial court exercised its discretion in deciding that the 'appropriate' course was to stay the action pending review by the [pharmacy b]oard. Under these circumstances, remand for further consideration of the primary jurisdiction doctrine is unnecessary." (*Ibid*.)

Like the pharmacy board's expertise in pharmacy licensing, assessing professional judgment, and evaluating dosage amounts (*Bradley*, *supra*, 64 Cal.App.5th at pp. 916-917), the Department similarly has unique specialized skills and the legal mandate to perform the technical sustainability evaluation requiring review of scientific material and subjective assessments (§ 10721, subds. (u), (w), (x)(1); Cal. Code Regs., tit. 23, § 355.4, subd. (b)(6)). The benefit in having the pharmacy board implement a uniform approach to addressing the statewide opioid issue (*Bradley*, at p. 918) is comparable to the benefits of the Department implementing a uniform approach to conducting the sustainability evaluation on groundwater sustainability plans throughout the state. Finally, just like the trial court in *Bradley* (*id*. at p. 922), the trial court here did not explicitly examine the primary jurisdiction doctrine but its decision to find the validation action mooted to avoid " 'assum[ing] the functions of an administrative agency, or to interfere with the functions

26

of an administrative agency' " eliminates the need for us to remand for further consideration.

Conversely, many cases declining application of the primary jurisdiction doctrine do so because a court is in the same if not better position to render a decision. This often occurs where a court is simply called upon to interpret provisions of a code, and "[s]tatutory construction, a bedrock of judicial tasks, is hardly an area where the trial court must defer to administrative agencies." (*People v. Adir Internat., LLC*, *supra*, 114 Cal.App.5th at p. 292.) "[N]either efficiency nor uniformity would be enhanced by 'administrative expertise' " when a "case turns on 'a question of statutory interpretation, a matter with which courts have considerable experience and which does not necessitate deferral to another agency.' " (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 126.) That is not the case here. Though the sustainability evaluation requires interpreting regulations, it is the application of these technical regulations to a technical groundwater sustainability plan that is the core function at issue. For the reasons discussed, efficiency and uniformity are best served by deferral to the Department in this case.

### III

### *Conclusion*

We end by clarifying the extent and limitations of our decision. We conclude the trial court here did not abuse its discretion by deferring to the Department and then dismissing plaintiffs' validation action because the Department's approval of defendants' plan performed the same sustainability evaluation plaintiffs sought to perform in their validation action; the complaint challenged the plan on no other ground. (See *Wise I*, *supra*, 132 Cal.App.4th at p. 741 [" 'the lawsuit resumes if the agency's resolution … has not resolved the entire controversy' "]; *Bradley*, *supra*, 64 Cal.App.5th at p. 922 ["Following a final [pharmacy b]oard decision on" an administrative complaint, "the action shall proceed on any remaining issues"].) For the reasons stated, deference to the

27

Department in these circumstances sufficiently satisfied the policies of the primary jurisdiction doctrine. We consequently affirm both the trial court's dismissal of plaintiffs' action and the trial court's denial of plaintiffs' motion for summary judgment on the same grounds—that latter too would have required conducting the sustainability evaluation for the reasons discussed. (*Olson v. Hornbrook Community Services Dist.*, *supra*, 68 Cal.App.5th at p. 268 [" ' "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record" ' "].)

Our decision does not foreclose judicial review of the Department's evaluation. "[T]he primary jurisdiction doctrine contemplates that the 'ruling' issued by the agency is itself subject to judicial review." (*Wise I*, *supra*, 132 Cal.App.4th at p. 741.) But plaintiffs' action was not to review the Department's evaluation, it was an action to supplant the Department's evaluation.

We also do not address other bases a validation action could challenge a groundwater sustainability plan. Our analysis does not address reverse validation actions challenging aspects of groundwater sustainability plans other than the sustainability evaluation, which may not so clearly further the policies underlying the primary jurisdiction doctrine. Nor does it address a mixed action consisting of a sustainability evaluation challenge with nonadministrative or common law claims. In these instances, a trial court has discretion to discern what effect, if any, the Department's evaluation has on the validation action. (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936-937 [discussing possible effects of administrative decision on lawsuit involving administrative and nonadministrative remedies].) The discretionary application of the primary jurisdiction doctrine "leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice." (*Farmers*, *supra*, 2 Cal.4th at pp. 391-392.)

## DISPOSITION

The orders of the trial court are affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
ROBIE, Acting P. J.

We concur:

/s/
KRAUSE, J.

/s/
MESIWALA, J.